ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of - | ) | |
| | ) | |
| Walsh Turner Joint Venture II | ) | ASBCA No. 63665 |
| | ) | |
| Under Contract No. W912QR-21-C-0027 | ) | |

APPEARANCES FOR THE APPELLANT: Larry W. Caudle, Jr., Esq.
　　Brad C. Friend, Esq.
　　　Kraftson Caudle LLC
　　　McLean, VA

APPEARANCES FOR THE GOVERNMENT: Michael P. Goodman, Esq.
　　　Engineer Chief Trial Attorney
　　James M. Inman, Esq.
　　　Engineer Trial Attorney
　　　U.S. Army Engineer District, Louisville

OPINION BY ADMINISTRATIVE JUDGE OSTERHOUT ON THE
GOVERNMENT'S MOTION TO DISMISS FOR LACK OF JURISDICTON

　　　The U.S. Army Corps of Engineers (the government or USACE) moves to dismiss this appeal for lack of jurisdiction and for failure to state a claim upon which relief may be granted. The government argues that the Board lacks jurisdiction to consider this appeal because the claim was brought by a party that was not the contracting party. To wit: the original notice of appeal was captioned as "Walsh Turner Joint Venture" rather than "Walsh-Turner Joint Venture II" which we had invited appellant to recaption. We deny the government's motion to dismiss for lack of jurisdiction because we find that the change in contractor name was a mere misnomer. Thus, the Board retains jurisdiction.

　　　The government also moves to dismiss this appeal for failure to state a claim. The dispute leading to this appeal stemmed from a COVID-era executive order directing contracting agencies to require their contractors to take a number of steps including vaccinating their workforce. The government issued a request for proposal (RFP) to Walsh – Turner JV II (WTJV II or appellant)[1] asking it to price its

---

[1] Because one of the issues presently before the Board deals with the name appellant
　　used when submitting its claim and subsequent notice of appeal, to avoid any
　　additional confusion, we refer to it as appellant or WTJV II to be consistent
　　with the Board's accepted name for the caption. We refrain from using any

compliance with the executive order, though it ultimately never required appellant to comply with it. Appellant argues that the government's issuance of the RFP wound up costing it a significant amount of money. The government here moves to dismiss under two theories. First, that the executive order at issue here was a sovereign act thus depriving WTJV II of the relief requested in its claim; and second, that an RFP is not considered a change under the contract. We agree and dismiss this appeal for failure to state a claim because an RFP is not a constructive change under the contract. Since we find appellant failed to state a claim upon which relief may be granted, we need not consider the government's sovereign acts doctrine argument. The appeal is dismissed for the reasons set forth below.

### STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. The government awarded firm-fixed-price Contract No. W912QR-21-C-0027 to "Walsh-Turner JV II" on August 17, 2021, for the construction of a new Veteran's Affairs (VA) medical center in Louisville, KY (R4, tab 4 at 20-21, 32-36).[2] The award letter addressed the contractor as "Walsh-Turner Joint Venture II" (R4, tab 3). On October 4, 2021, USACE issued the notice to proceed to "Walsh-Turner JV II," giving the contractor until January 5, 2026, to complete the project (R4, tab 6; compl. ¶ 5). At the time appellant filed its complaint with the Board on August 17, 2023, modifications had extended the completion date to January 24, 2026 (compl. ¶ 6).

2. The contract incorporated by reference Federal Acquisition Regulation (FAR) 52.243-4, CHANGES (JUN 2007) which provides, in relevant part:

> (b) Any other written or oral order (which, as used in this paragraph (b), includes direction, instruction, interpretation, or determination) from the Contracting Officer that causes a change shall be treated as a change order under this clause; provided, that the Contractor gives the Contracting Officer written notice stating
>
> (1) the date, circumstances, and source of the order and
> (2) that the Contractor regards the order as a change order.

---

other abbreviations except in explaining how the parties themselves reference appellant.

[2] The government's Rule 4 file is Bates numbered beginning with the prefix GR4 followed by zeros. The prefix and leading zeros are omitted in the citations to the government's Rule 4 file.

(c) Except as provided in this clause, no order, statement, or conduct of the Contracting Officer shall be treated as a change under this clause or entitle the Contractor to an equitable adjustment.

(d) If any change under this clause causes an increase or decrease in the Contractor's cost of, or the time required for, the performance of any part of the work under this contract, whether or not changed by any such order, the Contracting Officer shall make an equitable adjustment and modify the contract in writing . . . .

(R4, tab 4 at 50)

3. During the COVID-19 pandemic, the President issued Executive Order 14042 (EO 14042 or "the EO"), dated September 9, 2021, Ensuring Adequate COVID Safety Protocols for Federal Contractors (R4, tab 5). Exec. Order No. 14042, 86 Fed. Reg. 50,985 (Sept. 9, 2021). The EO directed a task force to establish guidance that required contractors to be completely vaccinated for COVID-19 by December 8, 2021 (R4, tab 5 at 94; compl. ¶ 14). SAFER FEDERAL WORKFORCE TASK FORCE, COVID 19 WORKPLACE SAFETY: GUIDANCE FOR FEDERAL CONTRACTORS AND SUBCONTRACTORS, 5 (2021), https://web.archive.org/web/20210927183021/https://www.saferfederalworkforce.gov/downloads/Draft%20contractor%20guidance%20doc_20210922.pdf.[3] The Task Force also directed the FAR Counsel to draft related clauses to be included in all new covered solicitations and contracts. *Id.* at 2. In response, the Department of Defense (DoD) "issued guidance in a Class Deviation 2021-O0009 for implementation of the EO through a new DFARS[4] clause, 252.223-7999 (Ensuring Adequate Safety COVID-19 Safety Protocols for Federal Contractors)" on October 1, 2021 (gov't mot. at 2 (citing R4, tab 7 at 120)).

4. USACE issued a request for proposal, Case 00008 (the RFP), on November 3, 2021, advising the contractor that the government was considering adding a COVID safety clause to the contract, in accordance with DoD guidance "Ensuring Adequate COVID-19 Safety Protocols for Federal Contractors." The RFP

---

[3] As the original website is no longer active and neither party included the guidance in the Rule 4 filings, we accessed the Task Force guidance using the Internet Archive's Wayback Machine at: https://web.archive.org/web/20210927183021/https://www.saferfederalworkforce.gov/downloads/Draft%20contractor%20guidance%20doc_20210922.pdf.

[4] The DFARS is the Department of Defense Supplement to the FAR.

also stated, "[t]his letter does not constitute a notice to proceed with the work involved.  Submit your proposal for this change to the undersigned by November 9, 2021 to facilitate negotiations."  (R4, tab 7 at 118)  The RFP was addressed to "Walsh-Turner JV II" (*id.*).  The cover letter accompanying the RFP was addressed to "Walsh-Turner Joint Venture II" and explained that "[t]he requirements in the [EO] are being implemented via a DFARS deviation.  The clause in the DFARS deviation will be incorporated into Louisville District contracts and is effective on the date of the contracting officer's signature" (R4, tab 8).  The letter continued, "[t]he modification is **mandatory** before Louisville District will renew, extend the period of performance of your contract, or exercise an option" (*id.*) (emphasis in original).  The cover letter also stated, "[i]f there are costs or time impacts associated with incorporating and complying with this DFARS deviation, please submit your proposal to the undersigned [CO] within 5 business days of receipt of this letter" (*id.*).  The RFP included the text of the new COVID clause, DFARS 252.223-7999, which required compliance with all guidance implementing the EO (R4, tab 7 at 120).

5.  On November 5, 2021, the government granted appellant an extension to submit its proposal in response to the RFP and scheduled a progress meeting where a new due date (in December 2021) would be established for submission of the proposal (R4, tab 10).  Ultimately, WTJV II did not submit a proposal (R4, tab 2 at 16).

6.  The district court for the Eastern District of Kentucky enjoined enforcement of EO 14042 on November 30, 2021 (R4, tab 11).  *Kentucky v. Biden*, 571 F.Supp.3d 715 (E.D. Ky. 2021).  The government then rescinded the RFP in a letter addressed to "Walsh – Turner JV II, ATTN: Ben Wells" on December 2, 2021, stating, "[a] proposal for this effort is no longer required.  If a proposal is needed later the government will reinitiate the request with a new letter requesting a proposal" (R4, tab 12).  By letter dated December 3, 2021, appellant expressed that

> [w]hile this new letter rescinds the RFP, it cannot rescind the deleterious and cascading effects which have already occurred as a result of the issuance of the RFP.  The impacts of the RFP are broad reaching and touch everyone that is or will become part of this project.  Such impacts include, but are not limited to, loss of interest from subcontractors, lack of progress on key submittals, loss of production slots, general procurement impacts, late deliveries, expediting costs, escalation costs, labor impacts, overtime costs, unnecessary expending of Walsh-Turner management costs, labor and the overall time impact to the project resulting from this RFP being issued and rescinded.

(R4, tab 14 at 160)  This letter was sent on Walsh Turner letterhead and referred to the contractor as "Walsh-Turner" throughout; the signature block reads "Benjamin Wells, Sr. Project Manager, Walsh – Turner Joint Venture II" (*id.* at 160-61).  The email transmitting this letter came from Mr. Wells; his signature block included Walsh / Turner JV II as the contractor's name and the email referred to the contractor as "Walsh – Turner JV II" (app. supp. R4, tab 4).

7.  On December 3, 2021, the government issued Modification No. P0004 (Mod. 4) which exercised option K (R4, tab 15).  The COVID clause, DFARS 252.223-7999, was *not* included in the modification (gov't mot. at 3 (citing compl. ¶ 23); *see* R4, tab 15).  Mod. 4 used "Walsh – Turner JV II" for the contractor's name (R4, tab 15 at 166).

8.  By letter dated February 7, 2022, appellant explained the impact of the RFP on awarding its subcontract for steel, the one-month delay on both the cost of steel, and the shorter time frame to meet deadlines (R4, tab 16).  Appellant included as enclosures correspondence from steel subcontractors outlining the additional costs for both the increase in the materials and forecasted acceleration costs for the delay in awarding the subcontracts because of the issuance of the RFP (*id.* at 174-77).  This letter was on Walsh Turner letterhead and the contractor referred to itself as "Walsh – Turner" throughout the letter; the signature block reads "Benjamin Wells, Project Manager, Walsh – Turner Joint Venture II" (*id.* at 169).  The signature block in the email transmitting this letter used "Walsh / Turner JV II" for the contractor's name (R4, tab 17).

9.  The project's area engineer responded to appellant's February 7, 2022 letter, characterizing it as an "unsolicited cost proposal" on March 3, 2022 (R4, tab 18).  The government indicated that the contract is firm-fixed-price which "places upon the contractor maximum risk and full responsibility for all costs and resulting profit or loss.  However, a contractor may be entitled to recover for cost escalation if it can demonstrate that government-caused delay pushed performance into a time when costs had escalated" (*id.*).  The government then requested that the contractor respond to some inquiries about the negotiations and timeline of the steel subcontracting (*id.*).  The letter was addressed to "Walsh-Turner Joint Venture II" and the text of the letter referred to the contractor as "Walsh-Turner Joint Venture II (Walsh-Turner)" (*id.*).

10.  WTJV II responded to the government's letter on March 18, 2022 (R4, tab 19).  This letter was also on Walsh Turner letterhead, the contractor referred to itself as "WTJV" throughout the text of the letter, and included Mr. Wells' signature block "Benjamin Wells, Project Manager, Walsh – Turner Joint Venture II" (*id.*).  Appellant explained its timeline for negotiating steel subcontracts and, at the time it was written, appellant had still not yet entered into a subcontract for the steel (*id.*

5

at 192). Additionally, appellant noted that the RFP "impeded WTJV's ability to award steel when the cost of steel was significantly less" (*id.* at 193).

11. The project's area manager responded by letter dated April 12, 2022,[5] addressing the contractor as "Walsh-Turner Joint Venture II" and relayed the government's position that it did not delay the contractor, but if WTJV II disagreed, it could submit a request for equitable adjustment (REA) or a claim to the contracting officer (CO) (R4, tab 20).

12. Appellant submitted its certified claim, on Walsh Turner letterhead, to USACE on December 29, 2022, for $1,694.899.21 for increased steel costs it alleges were a result of the heightened COVID-19 safety protocols required by EO 14042 (R4, tab 21 at 197-98, 207). Throughout the letter appellant referred to itself as "Walsh Turner Joint Venture ('WTJV')" and the letter was signed by "Benjamin Wells, Project Executive" (*id.*).

13. On April 13, 2023, the CO issued his final decision (COFD) denying appellant's claim finding that the higher steel costs were part of the risk of performing a firm-fixed-price contract and that the issuance of the RFP was not a change under the Contract (R4, tab 2 at 15-17). The COFD was addressed to "Mr. Ben Wells, Walsh Turner Joint Venture" and stated, "this letter responds to Walsh Turner Joint Venture's ('WTJV') letter dated 29 December 2022, which requested a final decision on its claim that WTJV is entitled to reimbursement for the alleged increased steel costs WTJV incurred" due to the issuance of the RFP (R4, tab 2 at 11). The government referred to appellant as "WTJV" throughout the COFD, including in the first finding of fact where the CO says the contract "was awarded by the U.S. Army Corps of Engineers ('USACE') to WTJV on 17 August 2021 . . ." (*id.* at 11).

14. Appellant timely filed its notice of appeal on July 12, 2023, under the name Walsh Turner Joint Venture; that was the name the Board used to docket this appeal. As noted above (SOF ¶¶ 12-13), the certified claim and COFD both used "Walsh Turner Joint Venture (WTJV)" in reference to the contractor.

15. The government submitted its Rule 4 file on August 11, 2023. After reviewing it, the Board noted that the contract, W912-Q5-21-C-0027, identified the contractor as "Walsh-Turner JV II." By Order dated August 17, 2023, the Board

---

[5] The letter is dated March 12, 2022, but the CAC signature indicates it was signed by the area manager on April 12, 2022. We assume the March 12, 2022, date is an error as this letter is clearly responding to the contractor's correspondence dated March 18, 2022 (R4, tab 19) so that is the date we use here. In addition, the government used the April 12, 2022, date in the index it submitted along with the Rule 4 file.

directed the parties to "explain the discrepancy in the contractor's name and identify the correct name of the entity bringing this appeal" (Bd. corr. ltr. dtd. August 17, 2023).

16. By correspondence dated August 17, 2023, appellant responded to the Board's Order stating, "[t]he original filing contained a misnomer in that it omitted the "II" from the entity's legal name. Appellant seeks a formal change in the party name to 'Walsh Turner Joint Venture II.'" By Order dated August 18, 2023, the Board changed the caption to Walsh Turner Joint Venture II in accordance with appellant's August 17, 2023, representations (Bd. corr. ltr. dtd. August 18, 2023).

17. Appellant submitted its complaint via email on August 17, 2023, though the document is dated August 17, 2022 (compl. ¶ 1). The caption to the complaint lists appellant's name as "Walsh Turner Alberici Joint Venture" (*id.*). The first paragraph of the complaint reads: "Walsh Turner Joint Venture ('WTJV'), Appellant, is the prime contractor for the construction of the New Veterans Affairs Medical Center ('VAMC') in Louisville, Kentucky" (compl. ¶ 1). Throughout the complaint, appellant refers to itself as WTJV (*see, e.g.*, compl. ¶¶ 5-6, 12, 15-21, 24-31, 35-42). In its prayer for relief, appellant again refers to itself as "Appellant Walsh Turner Joint Venture" (compl. ¶ 9).

18. The government filed this motion to dismiss on August 31, 2023. The caption of the government's motion identified appellant as "Walsh Turner Joint Venture" (gov't mot. at 1). Based on the record, this appears to be the first time the government raised the issue of the name under which appellant filed its claim. We find that the government did not raise the issue prior to the Board identifying it.

## DECISION

*The Parties' Contentions*

The government moves to dismiss for both lack of jurisdiction and failure to state a claim. Each has two components. First, the government argues that the Board lacks jurisdiction here because the contracting party was WTJV II and it was Walsh Turner Joint Venture (no inclusion of "II") that submitted first the certified claim and then the notice of appeal. The government next argues that the complaint fails to state a claim upon which relief can be granted for two reasons (gov't mot. at 6, 9). First, that the issuance of EO 14042 and, thus, the RFP that was issued to comply with the EO is a sovereign act (*id.* at 10-13). Second, that the issuance of the RFP is not a change under the contract and appellant is not entitled to an equitable adjustment (*id.* at 13-16).

7

Appellant opposes the government's motion, asserting that the Board retains jurisdiction over this appeal because "the omission by appellant of 'II' from the entity name on the certified claim and in the notice of appeal constitutes a misnomer, and the government was neither surprised nor prejudiced by such omission" (app. opp'n at 1). Appellant also disputes the government's argument that the issuance of the EO was a sovereign act because it was not "public or general" and argues that the RFP was a constructive change under the contract (*id.* at 7, 22-23).

*Jurisdiction*

The Board's jurisdiction arises out of the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 7101-7109. The CDA defines "contractor" as "a party to a Federal Government contract other than the Federal Government." 41 U.S.C. § 7101(7). Additionally, under the CDA the Board "only possesse[s] jurisdiction to adjudicate appeals taken by a contractor." *Nassar Group Int'l N.G.I. S.A.L. (Offshore) R.C., dba NGI Afghanistan for Contracting*, ASBCA No. 58451 *et al.*, 22-1 BCA ¶ 38,206 at 185,546 (citing *Afghan Washington Constr. Co.,* ASBCA No. 60856, 18-1 BCA ¶ 37,009 at 180,242).

We will discuss the party identity on the notice of appeal first since it was the subject to which the parties have devoted the most attention. With regard to misnomers, the Board has previously held that "[o]ur Board rules do not specifically mention correction of a misnomer in a pleading as a ground for amending a pleading. Nevertheless, we think that the established practice under Rule 15 of the Federal Rules of Civil Procedure permits amendment to correct a misnomer of a party to the action," and a "[m]ere technical defect[] in a pleading do[es] not provide a basis for dismissal." *Jardineria Iglesias, S.L.*, ASBCA No. 42967, 93-3 BCA ¶ 26,244 at 130,554 (citing *Jones v. State of La. through Board of Trustees*, 764 F.2d 1183, 1185-86 (5th Cir. 1985); *Huse v. Consolidated Freightways, Inc.*, 227 F.2d 425, 428-29 (7th Cir. 1955); 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRACTICE & PROCEDURE § 1474).

In *Jardineria*, the contract and its modifications were issued to "Antonio Iglesias Mateos;" the claim correspondence used "Antonio Iglesias Mateo" or "A. Iglesias" or "Jardineria Iglesias;" the claim letter used "A. Iglesias" and "Antonio Iglesias, on behalf of Jardineria Iglesias, S.L.;" and the notice of appeal used "Jardineria Iglesias, represented by Antonio Iglesias Mateos." 93-3 BCA ¶ 26,244 at 130,554. We denied the government's motion to dismiss for lack of jurisdiction, which argued that the notice of appeal was filed by a party that was not a party to the contract, in part, because the motion "d[id] not contend that [the government] was surprised or prejudiced in any way by the name 'Jardineria Iglesias, S.L." *Id.* Both the Court of Federal Claims and the Civilian Board of Contract Appeals (CBCA) have

8

cited *Jardineria* in more recent decisions.[6] *See Focus Revision Partners v. United States*, 161 Fed. Cl. 711, 730 (2022); *Eastco Bldg. Servs. v. Gen. Servs. Admin.*, CBCA 5272, 17-1 BCA ¶ 36,670 at 178,558.

In addition to *Jardineria,* appellant has also cited *Applied Precision Optics, Inc.,* ASBCA No. 21635, 77-2 BCA ¶ 12,695, to bolster its misnomer argument (app. opp'n at 5). *Applied Precision Optics* is helpful because it illustrates that even in an appeal in which the corporate identity of the contractor changed during contract performance (from a sole proprietorship to a differently-named corporation) without a novation agreement, the appeal being filed by the newly-named corporation should be considered, at most, a misnomer, because the government knew who it was dealing with and it was not prejudiced. *See Applied Precision Optics*, 77-2 BCA ¶ 12,695 at 61,605-07. Though *Applied Precision Optics*, being issued in 1977, predates the CDA, it underscores the point that it has long been the Board's practice to look to prejudice to the government and permit revision of the caption when there is a harmless misnomer.

The government's argument is not nearly as persuasive. It largely relies on *LaTella, Inc. d/b/a Advanced Electronic Systems* (*see* gov't mot. at 8-9), in which we granted a government motion to dismiss. That appeal, however, involved a situation in which the party bringing the appeal was not the business awarded the contract; was not the successor in interest to that business; there was no novation agreement; and there was no assignment of claims. The case was not about whether the wrong name was initially used on the notice of appeal as we have here; rather, it was about whether a completely different corporation could prosecute the appeal. *See* ASBCA No. 55653, 07-1 BCA ¶ 33,521 at 166,082-83. Another case raised by the government was *Redwood Furniture Co. Ltd., Tuncay Ticaret, and Estetik Mobilya*, ASBCA No. 54944 *et al.*, 06-2 BCA ¶ 33,317 (*see* gov't reply at 2-3). But this is a case where we ruled in favor of the appellant, allowing the correction of the misnomer where only the first claimant was named in the appeal, but the other two were meant to be included and had been in the initial claim. *See* 06-2 BCA ¶ 33,317 at 165,195. We find it hard to see *Redwood* as imposing a more restrictive read on misnomers than what we would have here, where the flaw was leaving out the Roman numeral II.

Throughout the parties' course of dealing as reflected in the record, appellant referred to itself variously as "WTJV," "Walsh – Turner," "Walsh – Turner JV II," and "Walsh – Turner Joint Venture II" in its correspondence with the government (*see*

---

[6] The government argues in its reply brief that *Jardineria* is not persuasive because it has been rarely cited in subsequent decisions (gov't reply at 2-3). This is simply inaccurate; moreover, it may merely reflect that, in light of the clear law, the government rarely makes challenges to the correction of obvious misnomers.

SOF ¶¶ 6, 8, 10, 12).  The government also did not consistently address correspondence to or reference appellant in its correspondence by the full name listed on the contract, "Walsh-Turner JV II," and referred to it variously as "Walsh-Turner JV II," "Walsh-Turner Joint Venture II," "Walsh Turner Joint Venture," and "WTJV" (*see* SOF ¶¶ 1, 4, 6, 7, 9, 11, 13).  It is clear from the parties' correspondence and the COFD that the government knew it was dealing with WTJV II, the contracted party, and that the parties both occasionally abbreviated the full name, including the "II," as they saw fit.  Additionally, the same representative from appellant, Mr. Wells, signed all of the relevant correspondence contained in the record on behalf of appellant and usually included appellant's full name as it appears in the contract in his signature block (SOF ¶¶ 6, 8, 10, 12).  There was no confusion here that prejudiced the government, and we agree with appellant that this was a misnomer.  The situation here is strikingly similar to that in *Jardineria*.  Like that appeal, the government here communicated with Mr. Wells and did not appear to be confused at any point as to whether "WTJV" or "Walsh-Turner" were different business entities than the contractor awarded the contract, "Walsh – Turner JV II."

Similar reasoning applies to the issue of the claim before the contracting officer.  To be sure, the claim was submitted by "Walsh-Turner Joint Venture" and the COFD responded to the same, but both the claim and the COFD referred to the correct contract number and we can entertain no serious doubt that the parties knew exactly who they were dealing with, as it had been the practice of both to use the slightly different variations of WTJV II's name interchangeably throughout performance of the contract.  In these circumstances, the deletion of the "II" in the claim is no more consequential than leaving off an "Inc." at the end of a company's name in a case where all parties were familiar with the company and there was no chance of confusion.  The result requested by the government would be a triumph of form over substance not required by the law.  Accordingly, the government's motion to dismiss for lack of jurisdiction is denied.

*Failure to State a Claim*

Having decided that we retain jurisdiction over this appeal, we turn to the government's two arguments that appellant failed to state a claim upon which relief can be granted.  For the non-moving party to prevail in a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  When deciding a motion to dismiss for failure to state a claim, the Board "must accept well-pleaded factual allegations as true and must draw all reasonable inferences in favor of the claimant." *Lockheed Martin Integrated Sys., Inc.*, ASBCA Nos. 59508, 59509, 17-1 BCA ¶ 36,597 at 178,281 (quoting *Kellogg Brown & Root Servs., Inc. v. United States*, 728 F.3d 1348, 1365 (Fed. Cir. 2013)).  "For purposes of assessing whether the

claim before us states a claim upon which relief can be granted, the primary document setting forth the claim is not the complaint, *per se*, but is either the contractor's claim or the government's claim, the latter asserted in a contracting officer's final decision as required by the Contract Disputes Act, 41 U.S.C. §7103(a)(3)." *Lockheed Martin*, 17-1 BCA ¶ 36,597 at 178,281.

We address the government's second argument first. Here, the government argues that "[a]ppellant wrongly contends the issuance and rescission of RFP-0008 constitute a constructive change, entitling it to an equitable adjustment" (gov't mot. at 13). Further, "[u]nder the Changes Clause, an RFP is not a constructive change because it is not a direction, instruction, or determination changing the work under the contract" (*id.*). Appellant counters that "RFP 0008 constituted a direction from the Contracting Officer for Appellant to prepare a proposal and pricing for the impact associated with adding DFARS 252.223-7999 to the Contract" (app. opp'n at 17) and this "direction" constituted a constructive change.

Appellant "has the burden of establishing by a preponderance of the evidence that the government's actions amounted to a constructive change to the contract." *Wright Bros., Bldg. Co., Eagle LLC*, ASBCA No. 62285, 23-1 BCA ¶ 38,255 at 185,779 (citing *CDM Constructors, Inc.*, ASBCA No. 60454 *et al.*, 18-1 BCA ¶ 37,190 at 181,011). An RFP is not generally considered a change to a contract because it is not a direction or order, but rather, a mechanism to solicit proposals from the contractor. *See* FAR 15.203(a) (explaining that RFPs "are used in negotiated acquisitions to communicate Government requirements to prospective contractors and to solicit proposals."). The contract incorporated the Changes Clause by reference, which reads, in relevant part, "[a]ny other written or oral order (which as used in this paragraph (b), includes direction, instruction, interpretation or determination) from the Contracting Officer that causes a change shall be treated as a change order . . ." (SOF ¶ 2). A contractor must show that "(1) it performed work beyond the contract requirements, and (2) that the additional work was ordered, expressly or impliedly, by the government" to establish that a constructive change occurred. *Bell/Heery v. United States*, 739 F.3d 1324, 1335 (Fed. Cir. 2014) (citing *The Redland Co. v. United States*, 97 Fed. Cl. 736, 755-56 (2011)).

First, appellant did not actually *perform* outside the requirements of the contract and the COVID clause was never adopted into the contract. Before and after the issuance and subsequent recission of the RFP, the contract required appellant to procure steel for this project. Appellant indicates that the costs of steel increased over the approximate one month the RFP was issued, but appellant never responded to the RFP by the November 2021 deadline, and in fact, requested an extension until

December 2021 (SOF ¶ 5), and ultimately the RFP was later rescinded (SOF ¶ 6).[7] Second, appellant has not shown that the government ordered, either expressly or impliedly, any additional work. The government expressly did not order any work as part of the RFP stating "this letter does not constitute a notice to proceed with the work involved. *Submit your proposal for this change . . . to facilitate negotiations*" (SOF ¶ 4 (emphasis added)). To be sure, WTJV II alleges that the issuance of the RFP imposed upon it a duty to require that its subcontractors' bids comply with EO 14042 and the corresponding new DFARS provision, thereby increasing its costs (*see* app. opp'n at 9-10), but this argument is unpersuasive. It rests upon the allegation in its complaint that the mere issuance of the RFP imposed this duty upon WTJV II (*see* app. opp'n at 9 (citing compl. ¶ 15)), when by its very terms the RFP imposes no obligations upon WTJV II except to submit a proposal.

A generous reading of the factual allegations in WTJV II's complaint might support some sort of argument that other directions given by the CO with respect to the future incorporation of the new DFARS provision into the contract would impose changes upon performance (*see, e.g.,* compl. ¶¶ 9 10, 12). However, the actual legal basis for relief as claimed in the complaint rests solely on the government's issuance and then recission of the RFP (*see* compl. ¶¶ 35-38). Because the RFP explicitly directs that it is not a notice to proceed, it cannot be a constructive change to the contract. Thus, even drawing all reasonable inferences in favor of appellant and accepting all facts in the claim as true, appellant has not met its burden to establish that the government's issuance of the RFP amounted to a constructive change to the contract.

Because we rule in favor of the government on the RFP issue, we need not decide its sovereign acts defense.

---

[7] Additionally, as of March 18, 2022, appellant had still not entered into a subcontract for the required steel for this project (SOF ¶ 10), which raises questions about whether the RFP was in fact the only factor preventing WTJV II from securing its steel subcontract.

12

<u>CONCLUSION</u>

The government's motion to dismiss for lack of jurisdiction is denied; the government's motion to dismiss for failure to state a claim is granted on the RFP issue and the appeal is dismissed with prejudice for failure to state a claim upon which relief can be granted.

Dated:  May 8, 2025

HEIDI L. OSTERHOUT
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

OWEN C. WILSON
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63665, Appeal of Walsh Turner Joint Venture II, rendered in conformance with the Board's Charter.

Dated: May 8, 2025

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals